24 1894 United States of America versus Leron Liggins. Oral argument not to exceed 15 minutes per side. Mr. Fink for the defendant. Your honors, good morning. May it please the court. My name is Wade Fink. I represent the appellant in this case, Leron Liggins. And let me take 10 seconds to thank the court for granting oral argument in these criminal cases. I know there's been a trend of less oral arguments, but I want to express gratitude that we think it's important in the criminal bar and we're grateful for the time. Your honors, before you is a very discreet issue that was preserved by Mr. Liggins and his plea agreement, a conditional plea to be able to challenge the issues surrounding his motion to suppress and the admittedly unlawful wire tap that concededly, I should say, unlawful wire tap that took place in the investigation of this offense. I want to start, your honors, and obviously what's important to you is important to me. So if there's another direction, any of you want to go, please ask. But I want to start with the threshold issue of waiver and forfeiture on the issue of standing. This case originated in 2018. It was litigated heavily by prior defense counsel. It was tried. The court will recall in the procedural posture there was an appeal. It was reversed and remanded based on another issue and that resulted in this plea agreement and the conditional plea with this appeal. Nowhere in the five years before this second appeal did the government ever raise the issue of standing to bar a Fourth Amendment claim. Do you think it matters whether our remand from the first appeal was a general remand or a limited remand? Because as I understand the law, a general remand would open all issues, essentially de novo, whatever you want to call it. It's essentially start from scratch. So that would suggest no waiver or forfeiture. I don't. I appreciate the distinction and one that's made. I think that as a general matter, the mandate from this court would have been a general remand. I'm not going to try to frame it otherwise. But that does not, generally speaking, yes. I mean you go back to a pretrial status, you raise the issues you would raise. But that does not sanitize the unique issues of the posture in this case. You know if I, for example, if I was the defense lawyer, let's just say the trial counsel had waived his client's appearance at a hearing or waived formal reading of the arraignment in the original case, not suddenly going to make an issue of something that they had affirmatively waived previously. I mean there's law of the case doctrine. There's things that have already been litigated and adjudicated. And it's our position that this wasn't just forfeiture, but this was an intentional relinquishment of any ability to raise standing. Whether that was a conscious decision or not, the decision was made to self-suppress. I mean that was written to you in a prior appeal. So as part of the general remand, that includes the arguments that were made on appeal, the decisions made by the prior appellate counsel and prior trial counsel, to self-suppress. We are not going to use this because we agree it was unlawfully obtained. To suddenly latch onto a sua sponte comment by our brilliant trial judge and bringing it up five years into litigation after Mr. Liggins has been held without bail, litigating this case, wondering the genesis of the case, is extremely prejudicial. So is the prejudice just the delay? Is there any suggestion in the record that you were prejudiced in a more tangible way, say, because you didn't get a fair right to raise a complete argument about standing? Or you had some type of evidentiary shortcoming to prove it in the way that the government raised it? Or is it essentially just at the time? It's a great question, Judge Murphy, and I've been thinking about the question of prejudice in this, and I think there's two answers. To directly answer your question, I think the tangible prejudice is time, resources, efforts, and the cost-benefit analysis for Mr. Liggins making whether to go to trial or not. I mean, investing that emotional currency as well as his desire to go to trial versus make a plea. The government decides to self-suppress without that evidence and making these determinations, and go through the long litigation process, be denied pretrial bail, then on the remand after spending about six years in custody. I think that is a tangible prejudicial effect. But I also want to go further than that. I'm more into tangible, and I will grant you, Judge Murphy, that it's a little more vague and amorphous, but there are rules. The last time I argued in front of this court was about the FDO, the Federal Defender's Office, not timely having brought in a Bruton motion because they missed the motion cutoff and didn't ask for leave to bring a motion. You know, panel, this court said, sorry, it's too late. I'm not sure what the prejudice to the government was because they litigated the whole thing all the way through, and it was denied both for timeliness and on the merits. My point is there are rules of the game, and to have not raised this and affirmatively said we agree this shouldn't come into trial, to suddenly have this as a parachute on the remand, I think is unfair. Is it a prejudice question, or is the policy, as we explained in the Dale case, that the key is surprise to the litigants? So tell me how it was a surprise. Here's my Dale note, Judge Stratton. Tell me how it was a surprise. I agree with you that the general reason for waiver analysis, generally speaking, is to allow the lower court to decide it so you have a record before you and you can decide it. I agree. I'm not disputing that. But I also think there are other contours of why waiver and forfeiture analysis also apply, and I think that's the United States versus Robert Burrell is the case I'm referring to about a motion deadline. You know, that's kind of an arbitrary deadline and it may not be prejudicial. I'm saying my point being we make decisions, defendants, lawyers, based on the rules of the game. And when five years go by and we've all agreed that this should be suppressed because it was an unlawful wire tap, and suddenly six years later being held without bail we're now arguing about standing and now I'm back before you arguing about standing instead of the fruits of the poisonous tree or the merits of it, I think that is a general unfairness that Dale didn't really have to address. It's a different circumstance. But yes, that is the purpose, and that's the ultimate irony, I think, of their waiver argument against me, is the court did decide these issues and even highlighted them. Well, if you don't mind, can we switch to the merits? We can. I'd be happy to. It seems to me you have a good textual argument in the kind of just reading the plain text that it's whatever the target approach with the back end language person against whom the interception was directed, but what's your best, it seems the courts on the other side of the split seem to rely on the Felix Frankfurter idea that when you take language from an old, he uses, I can't really, when you take language from a different context it brings its meaning with it, and he uses roots or something, it brings its roots. So it seems like the background and the time when they passed the statute, Fourth Amendment standing was kind of an established doctrine, and so maybe we should be interpreting this text against the backdrop of the doctrine that existed at the time, and that doctrine was more limited than what you would advocate for with the target theory. So kind of what's your best response to that? I appreciate that question, too, Judge Murphy. My response to that is twofold. One, regardless of the context in which a statute is decided, I think most courts would agree, most panels, whatever ideological part of the spectrum your judicial philosophy is, is starting with the text. And like you said, Judge Murphy, starting with the text, you are rendering a disjunctive part of that statute irrelevant by saying that it's not relevant, and that it's purely within the Fourth Amendment context, its extent. And the reason for that is, Judge, and the reason I don't think we go any further than that to this idea of what the context was, is because we have all kinds of statutes that are more restrictive than the Fourth Amendment. I mean, that is not uncommon. I mean, the Title III itself goes beyond the Fourth Amendment just in its existence. The Supreme Court has found that you can record a phone call in a one-party consent situation. That doesn't violate the Fourth Amendment. It violates Title III. That's more restrictive than the Fourth Amendment. Judge White, you're from Michigan. Michigan has a more restrictive reading of the Fourth Amendment in its constitution than the federal constitution. I mean, we have statutes and rules that are more restrictive. So it's not, just because it was passed in a context of these understandings of the reasonable expectation of privacy, does not render the statute somehow limited by it. We have privacy statutes that protect journalists in certain circumstances, electronic stored communications. Well, how about we address that? Doesn't Baronek address that and simply concede that Title III provides a defendant greater protection than the Fourth Amendment? Yes. Yes, Judge Stranson. But the reason I'm harping on it here is into Judge Murphy's question that I think courts have used that as a limitation, as a box on the definition of target, being a target versus being subject of the entire wiretap or the affidavit and probable cause finding of being in the same category, basically. So I'm trying to answer the more duress question. But yes, Judge Tranch, I think that's an obvious point. But the reason it's important in this context is Judge Lightman, his ruling basically consistent with Alderman and some of this court's precedent, almost found it coextensive with the Fourth Amendment in the sense that that's what Alderman does. So what I'm trying to argue to the court is there is one part, the first part of the restriction, which is if you are directly captured on a wiretap, you have this expectation of privacy, you're protected. But there's the second category if you are the target of the investigation. And I'm saying that broader category may go beyond what is protected by the Fourth Amendment, but we have to give the statute meaning. And frankly, the danger in interpreting it differently, and for the record, Judge Tranch, also just in the same line that you were asking me about, Asker and these other cases don't really address this question, I don't think, directly. The danger, if I could just finish this thought because it's about to end, Judge Murphy, is you can have the government direct, like they do and like was admitted in the record below, a wiretap at a certain individual, knowing they are going to capture a much broader scope of private conversations with other folks. I mean, that is the purpose of conducting these wide swaths, target unknown, unknown co-conspirator one, two, and three. You necessarily are targeting the people that they are communicating with. Just because they are not named doesn't mean that that's not a target. Didn't the district court here go through that analysis and actually discerned that the first two calls, the rondo calls, I would call them, are in a distinct category from the third call on which Liggins was a participant, right? Yes, he did. And ultimately determined that the rondo calls did not get Liggins where he needed to be. Yes, the answer is yes, Judge Strantz, that he did distinguish between those two. Where I think he was incorrect and where I think he erred is that Liggins in the rondo calls falls under the second category. I was going to ask that, so I'll just ask it now. What's your best argument for why, I mean we could avoid the circuit split, say either way your client loses. What's the best I was struggling to find a term for it. Target theory is what I'll use it. The best evidence is the breadth and scope of the Title III warrant sought. I mean if a DEA agent like Agent Hermans here can swear out an affidavit that just says I am targeting John Doe and unknown conspirators that talk to John Doe about drugs in this Title III warrant, he affirmatively knows it is necessarily the case that he is going to capture other targets in that call. So it's not a situation where you're just opening the floodgates that everybody can suddenly challenge Title III's and oh my God, we're going to have all this suppression hearings. No, you can get a proper warrant. The warrant here was defective because of a government mistake. If you wanted me to read any case that suggested this broader theory, which would include unnamed co-conspirators when you list whatever the lingo is in the affidavit, what case would you have me read? Judge Breyer's Giordaro case in the Southern District of California. It's cited in my brief. I know what case you're talking about. Does that go beyond? So if it mentions a specific person in the affidavit, that's clearly where the target theory would apply. But I think you're taking it to the next step that if it says John Doe's, that it would cover basically everybody who's a part of any criminal conspiracy. I think it has to, Judge Murphy, because if you don't find that way, why wouldn't every single DA agent write his warrant that way to necessarily capture everybody and evade any reasonable expectation of privacy? I mean, these folks are also talking to their wives about their dinner plans and vacations, which we've got to remember, we don't hear those, but those are private conversations that those folks don't want people to hear. I know I'm speaking very colloquially here, but that is the privacy interest of why we have the Fourth Amendment. So if you don't find that someone like Liggins falls within that category, then the incentive here is not to put specific overlays. And your understanding of that would be that the problem exists in any affidavit application that says co-conspirators yet unknown, which is the situation here, but that's really not quite where we are in this case because we have the two calls first that talk about Rondo, but then we have Mr. Liggins actually on the third call. So isn't the question whether his presence on the third call then gives him some protection downstream, not upstream? Judge Trance, that is a great question, and maybe I misunderstood it the first time, so I'm sorry for meandering. That is my first part of my argument, that being on this later call, on the October 31st call, would then capture the fact that he was the first category of person being captured. I think that that is in the same series of wiretaps. Just because he's caught later or before is really a distinction without a difference because he's captured within the same investigation. My alternative approach is what I was discussing here with Judge Murphy, is that even if you don't agree with that, that he was captured on this later call, so it doesn't really matter and that wasn't used, he still, I'm saying, was a unknown co-conspirator target in general. So regardless of whether his voice is captured, he is still entitled to invoke his Title III protections. That's the distinction I'm making. I appreciate you pointing it out. Okay. Thank you and you'll have your full rebuttal. Thank you, Your Honors. Good morning. May it please the Court, I'm Andrea Hutting on behalf of the United States. This Court should affirm the District Court's denial of Laron Liggins' motion to suppress. I'd like to begin by addressing the standing limitation that the defendant here faces with respect to his challenge to that Arizona State wiretap. If this Court were to use this opinion today to address Title III standing in the Sixth Circuit again, as it relates to Laron Liggins, it's only an academic question. And I say that because here, under any theory of Title III standing, however broad it may reach, Laron Liggins lacks standing here to challenge the calls from the Arizona State wiretap that led to a seizure of cash from his luggage. And the District Court judge, in examining the full panoply of Title III standing law, correctly ruled that Mr. Liggins lacked standing under any theory, no matter how broad. What do you make of, I think, the theory that Judge Stranch was positing that the statute says any aggrieved person, so he would qualify as an aggrieved person for the third call, may move to suppress the contents of any wire or oral communication intercept pursuant to this chapter or evidence derived therefrom. It doesn't say, I think your limitation would have it read the contents of the specific wire or oral communication on which the person participate or something to that effect. And so the theory being that once you're an aggrieved person for one call, you become an aggrieved person for every call, and so have the right to challenge it for every call. So I think it's actually established precedent in this circuit that if you are an interceptee of a call on someone else's phone, you only have standing to challenge the call in which you participate. And if you look at the Asker case, which is the most recent case out of this circuit, the facts are rather indistinguishable in terms of the claim of Title III standing. That happy Asker, the defendant there was trying to assert and what Mr. Liggins is trying to assert here. In that case, happy Asker was intercepted on one single occasion, on a phone call, over his friend's phone. He then tried to use Title III standing to say that he had the ability to suppress all of the calls from the Title III interception. And this court rejected that premise. This court specifically said, defendants can't seek to suppress any call, only the calls that they were a party to or that occurred over their phone. And the government does acknowledge Mr. Liggins has standing as it relates to that third call, the October 31st call. However, the evidence that he's seeking to suppress in terms of the cash that was seized from his luggage, that was derived from calls earlier on October 21st and 22nd. Your response to me was like a precedential point, which is a good response. But I suppose Asker was unpublished. And do you think it engaged with the text at all? I do. And I agree, yes. I guess I would prefer a textual argument as well, in addition to a precedential argument. How would you read this to have it be limited to adopt Asker's holding? I think the text of the Title III statute still embraces the Fourth Amendment's principles for standing.  I think that it does embody them, yes. If it embodies them, it can embody them and state them distinctly regarding standing under the statute. Or it can embody them and bind them. So what is your answer? If it does embody them, is the limitation to Fourth Amendment precedent? Or do you concede under Baroneck and other analyses that Title III is distinct from Fourth Amendment law because it provides its own statutory standing provisions? Well, I think this Court could use its opinion to provide clarity and direction to litigants in the future. I think that the text of a party to a communication provides an individual standing means when you participate, that is the extra. So I do think that it embodies it, but it also is looking at that additional statutory text. The concept of against whom an interception is directed is that central principle of the statute, which most typically, and in this case, means whose phone did it occur over. So in terms of looking at the actual text of the Title III statute and its definition of who qualifies as an aggrieved party, I think it still does fit appropriately and that's why Alderman under the Supreme Court, Cooper, and Asker here in this circuit have all found that Title III follows the Fourth Amendment because you have standing as a party to the communication in which you participated, but you also have standing as the person who holds the phone, or so to speak, the person against whom that interception was directed. I think I see your reading now, but without the background, it seems to me the most natural reading of against whom the interception was directed would be the person who is under investigation. So if the affidavit says we're trying to investigate person X and we think that this phone will have communications about person X's drug conspiracy, even if it's not that person's phone, I would arguably say that the interception is being directed against that person. Why would that be mistaken? So I still think that it is then the party to the communication, that by virtue of the first part of the statute, you're being... Yeah, but assume person X is not a party to the communication, but he's the person, he's the kingpin, say. He's the person that's really being investigated and he uses all these lower-level drug dealers, and you know that the lower-level drug dealers have this phone number, and you lay it all out in your affidavit, and you seek interceptions of the lower-level drug dealers' activity to kind of implicate the kingpin. Arguably, you would say that that person is against whom the interception was directed because you're trying to get incriminating information about them. Well, as I read the Title III statute, both textually and in the eyes of the precedent from both the Supreme Court and the circuit, I still think that it is a matter of the kingpin could have standing if he then was intercepted over a particular call or text message. But in terms of against whom it is directed, to me, that reads both through statute and case precedent, who is the identified user of the phone. And the circuit that's gone the furthest in this concept of target standing was the ninth in the Oliva case. But the issue in the Oliva case was that the defendant there wasn't willing to make those traditional prima facie showings of standing in order to suppress the wire. There, he wasn't willing to say that it was his voice over the interceptions, nor was he willing to acknowledge that it was his device over which the interceptions were made, the person against whom the interceptions were directed. However, the court there said it wasn't necessary because the affidavit itself acknowledged it was his voice and he was the user of that device, the person against whom the interceptions were sought. And so I think even there, it reaches to the text of the Title III statute and Fourth Amendment standing principles. In that argument, where do you stand on unidentified co-conspirators or whatever the co-conspirators yet unknown here, all of Jimenez's organizational co-conspirators? Well, you took me right to where I was headed. Thank you. So as it relates to the theory that counsel is advancing, and I would note that was not advanced in district court filings. It was something that he argued. He acknowledged, hey, I'm thinking of this in the moment while we're here at argument after briefing is concluded. But what he said was he must be a target because he is one of those yet to be identified co-conspirators. But there is absolutely no precedent in any circuit to say that someone who is not a named individual, a named target in a wiretap application is conferred standing. And then when we submitted our appellate briefs, we saw yet a third theory of standing, which wasn't really discussed during oral argument today, but it was by virtue of the fact that other people talked about me, merely because I am this subject of conversation. The Rondeau calls, if you will. I have standing. No circuit has ever gone that far in conferring Title III standing to an individual. But, I mean, it doesn't make sense to me to sort of require that someone be named. I just think that would be subject to such abuse that we just, you could know exactly who the person is, know that they're a target, that they're a participant in an operation that you're targeting, and simply, you know, not include their name or say you don't know it. It seems to me that just that bright line rule, that if they're not named, that's it, doesn't work. So, respectfully, I think that if you follow the precedent that is set for Fourth Amendment, which I do think fits with statutory construction, that is not the case. Because you can still name other individuals who you anticipate that you may intercept. Those individuals, if they in fact are intercepted, are going to have standing because they then are a party to the communication. They might not fit under that second of a person against whom it was directed. But if they're intercepted and they are a participant in a call, they will absolutely have the standing to challenge and seek to suppress that particular call from the wire application. And also, in terms of the... Let me ask you this question. Let's say a police or a police officer is a target and more aware of an operation and the extent of it than they were in this case. It's a hypothetical. And they know that there's someone in Michigan who is regularly sending drugs down to Arizona, and sometimes money, and they want to... They are, you know, they're investigation is targeting that person and the person in Arizona, and they don't yet know the identity of the person in Michigan. Are they protected? Do they have standing? If they're intercepted. If they're intercepted. But what if they're just mentioned? Then no, I do not think that they just have general standing. If they do in fact become a party to a communication, then yes, they would. Do you think even under the broader theory... So I think your response to Judge White was based on the narrower theory and the circuit split. But even the broader theory has limits. So assume that we were to adopt the broader theory, do you think... What limits do you think should exist then? So even under the broader theory, you have to be a named individual within the application. You cannot be a yet-to-be-identified... But what if... So what if it was perfectly clear that the government just simply didn't name them to not give them standing under that view? So it'd be... Why wouldn't it maybe named or known potentially, or where it's clear from the context they know who the person is, but they just maybe use a pseudonym or something? So it seems like that could be a case as compared to just all known and unknown individuals. That would be highly problematic, I think, if anybody applied for a Title III wire application where they knew who someone was, but just referred to them as a synonym or some sort of pseudonym. That would, I think, cut against necessity. I think that that is not probable. I think that that's a question that poses the... Is anything possible? Perhaps, but I don't think that that's probable. I don't think that that would be appropriate police conduct either. But at core, your argument is, we don't need to reach that. You do not need to reach that, because he was on the call, so that gives him standing for that call. So what are the exceptions to the exclusionary rule that you are primarily leaning on? So as it relates to that, and I see that I'm going to be up, so if I could. Thank you. As it relates to the exclusionary rule, we did brief the issue of attenuation. And so attenuation, even if you don't address standing, is another way that you could affirm the denial of the suppression motion. And it's in the record. And here, when you consider the attenuation, it goes to two things. It goes to the use of the evidence, the luggage that was seized in the... Excuse me, the cash that was seized from the luggage, but also to the testimony of Ms. Jimenez, who was Mr. Liggins' co-conspirator in Arizona. She testified at the first trial. Now that we have a remand, almost a decade later, she could make an independent decision to testify. You look at three factors for attenuation, which we laid out in our briefing, and we believe that all three factors under the attenuation doctrine here weigh heavily in our favor. You look at temporal proximity. You look at whether there are intervening circumstances. And then the most significant factor is the purpose and the flagrancy of the police misconduct that you're trying to deter. Well, here, as it related to that Arizona state wiretap, there really is no police misconduct to deter, which is that most significant consideration. It was really just a ministerial error on the part of the prosecuting officials, in terms of who signed off. And don't you also rely on independent source? Don't you say that you would... It's not quite inevitable discovery, but it is truly the claim of independent source. It is. Right? That you got your information through another avenue. It is, especially as it relates to the drug seizure, which we didn't have an opportunity to address, but was fully examined at an evidentiary hearing. And the judge correctly ruled, after hearing from law enforcement testimony, that the drug seizure in Detroit was entirely independent from an Arizona state wiretap months earlier. And even during a colloquy with the district court judge, counsel for Mr. Liggins acknowledged that if the judge at the district court credited law enforcement's testimony about how they came to seize the drugs from Mr. Liggins' courier, then he didn't have the causal link to carry his motion. So he even made that concession during argument. I hope that I've answered your question fully. I know I didn't go through all of the factors, but I have exceeded my time. It's in the briefing. Yes, it is. Thank you very much. Thank you, counsel. All right, Judge Murphy, I need about 20 minutes. I'm just kidding. My concession had to do with a distinct part of the proofs against Mr. Liggins. Murphy, the Murphy evidence, the evidence in Detroit. There can be no attenuation in this case when they directly use the evidence that was derived from the unlawful wiretap. I have gone through pains of trying to articulate this in my last brief, and we never got to it in the first appeal because it was unnecessary and something that was unaddressed by Judge Lightman. Regardless of how they got to the Murphy evidence, they used the Jimenez evidence at his first trial. So even suppressing just that, this Jimenez evidence, gives no cooperation then in a much different trial on just the Murphy evidence. I'm not following you. I appreciate that, Judge White. Let me be more precise. So there was two categories of evidence against Mr. Liggins that convicted him in his first trial. The seizure in Arizona, I'm calling that the Jimenez evidence that was the result of the wiretap, and the Murphy evidence, which was a seizure in the Detroit airport. So the Arizona airport and the Detroit airport. The Jimenez evidence, everything that happened in Arizona was admitted at trial in the first trial to show that he was guilty of distributing narcotics. Jimenez testified, what happened in Arizona testified, the recorded calls were even mentioned at trial. That was all used as part of the proofs to convict him. Separate from that, there was the proofs about Detroit. Murphy testified about her being stopped at the airport, drugs found on her, and her links to Mr. Liggins. Obviously having them both would lead a jury to believe there's cooperation for one another. Similar fact patterns, two different women doing the same thing. Where the attenuation fails is, the admission of the Jimenez evidence is directly causally linked to the unlawful wiretap. Agent Hermans admits that at the evidentiary hearing, that he knows of no information that predates the wiretaps. So the evidence they use, the Jimenez evidence, the Arizona evidence, is a direct result of the unlawful wiretap. That should not be admitted at a theoretical second trial. And without that evidence... Is that the distinction between the two Rondo information and the one Liggins information intercepted phone call? No. All of the calls, all of the calls that we're talking about relate to this Jimenez evidence, to the Arizona seizure. All of them. So all of this analysis is to do with the Jimenez evidence. Where I made the concession on causation here in the attenuation doctrine and independent source is just as to the second batch of evidence Murphy. I could not link in that evidentiary hearing the Title III violation to the Murphy evidence. But she didn't testify in the second trial. It was a plea. The second case was a plea. So in theory, if you were to agree with me on my theory of the statute and said that that's a wrongful reading of the statute, my argument then to the district court would be well then you have to suppress the Jimenez batch of evidence and this second trial becomes a much different trial because then it's just about Murphy and you lose, you know, half of the evidence that allegedly corroborates that. It's a much different facts question. So that I think is very important to understanding why attenuation doesn't work because this isn't just about attenuation. It is the direct result of the unlawful wiretap that half of the evidence from the trial was admitted. Okay. Well, any further questions? No? Thanks. Thank you for your arguments today. I understand Mr. Fink, you're a CJA lawyer. We appreciate your service to the court. Thank you for saying that, Judge. With the second case completed, it will be submitted and a clerk can adjourn court.